# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF VIRGINIA
### CHARLOTTESVILLE DIVISION

|  |  |
|---|---|
| UNITED STATES OF AMERICA | CASE NO. 3:94-cr-00008 |
| v. | MEMORANDUM OPINION |
| REGINALD MARLIN ISMEL, | JUDGE NORMAN K. MOON |
| *Defendant.* | |

This matter is before the Court on Defendant Reggie Ismel's motion for resentencing pursuant to the First Step Act of 2018. Dkt. 374. Having reviewed the submissions from both sides, the record, and recent developments in the Fourth Circuit's caselaw, the Court finds that Ismel's sentence should be reduced.

## I

Ismel was convicted of conspiring with seven others to distribute crack cocaine in Charlottesville from the summer of 1989 through the spring of 1994. Dkt. 337 (Presentence Investigation Report, "PSR") ¶ 6. The evidence produced at trial showed that Ismel and co-defendant Richard Degout transported, or arranged to have transported, cocaine from New York City to be distributed sub-distributors here. *Id*. at ¶ 7. It also showed that Ismel and Degout routinely carried firearms to maintain a "tough" reputation while conducting sales. *Id*.

A centerpiece of the prosecution's case was the murder of Anthony Jones. The government produced a witness who testified that he observed Degout fatally shoot Jones over a

drug deal. *Id*. at ¶ 9. Another witness, Frank Hardy, testified that while in prison with Ismel he overheard Ismel admit to ordering Jones' murder. *Id*. at ¶ 10.[1]

The jury convicted Ismel of two drug counts on September 23, 1994. *See* Dkt. 142. Count One charged conspiracy to distribute 50 grams or more of cocaine base in violation of 21 U.S.C. §§ 846, 841(b)(1)(A). *See* Dkt. 1. Count Two was for murder during and in relation to a drug distribution conspiracy in violation of 21 U.S.C. § 848(e)(1)(A). *Id*.

After trial Ismel was sentenced to life on both counts in accordance with the then-mandatory Sentencing Guidelines. Dkt. 180. At the time, a violation of § 841(b)(1)(A) carried a mandatory minimum sentence of 10 years and a maximum sentence of life imprisonment for an offense involving at least 50 grams of crack cocaine. *See United States v. Lancaster*, 997 F.3d 171, 174 (4th Cir. 2021) (explaining that "Section 2 of the Fair Sentencing Act . . . reduced the sentences for trafficking in crack cocaine by raising the threshold quantity of crack for a 10-year mandatory minimum sentence from 50 to 280 grams and the threshold quantity for a 5-year mandatory minimum sentence from 5 grams to 28 grams."). A violation of § 848(e)(1)(A) carried a minimum sentence of 20 years and a maximum sentence of life, as it does today.

Ismel's Guideline sentence was driven by the murder of Jones, which resulted in a base offense level of 43 on both counts. PSR ¶¶ 15, 22, 38. Regardless of criminal history category, a base offense level of 43 corresponds to a guideline range of life imprisonment. U.S.S.G. Chapter 5, Part A.

In November of 2020 Ismel filed a motion for resentencing under § 404(b) of the First Step Act. Dkt. 374. After briefing was completed, the Government successfully moved to hold

---

[1] Hardy has since recanted this testimony in a sworn affidavit. *See* Dkt. 374-1 (Hardy Affidavit).

Ismel's motion in abeyance pending resolution of two cases before the Fourth Circuit: *United States v. Jenkins*, No. 20-6505, and *United States v. Thomas*, No. 20-6234. Dkts. 388, 390. These cases raise the question whether § 848(e) is a "covered offense" under § 404(b) of the First Step Act. Currently pending is a motion from Ismel to remove his case from abeyance on the theory that the Court may resentence Ismel on his § 848(e) conviction regardless of how the Fourth Circuit answers that question under the sentencing package doctrine. Dkt. 393. The Court agrees and will accordingly grant the motion and remove the case from abeyance.

## II

The Fair Sentencing Act of 2010 "reduced sentencing disparities between cocaine and crack cocaine offenses, which were widely criticized for producing racially disproportionate sentencing outcomes." *United States v. Collington*, 995 F.3d 347, 351 (4th Cir. 2021). But the Act only applied prospectively. Congress passed the First Step Act eight years later to allow for resentencing of individuals like Ismel who were sentenced too early to benefit from the Fair Sentencing Act's reforms. *Id*. at 352.

Section 404(b) of the First Step Act of 2018 permits "a court that imposed a sentence for a covered offense" to "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 were in effect at the time the covered offense was committed." A "covered offense" is defined as "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010[.]" *Id*.

Less clear is the scope of relief available under the First Step Act for defendants serving time on a sentence that resulted from both covered and non-covered offenses. Ismel argues that the First Step Act authorizes resentencing on all counts of conviction, as opposed to covered offenses alone, on the theory that sentences are imposed as part of a package that cannot be

unbundled. The Court will follow this approach for the reasons previously stated in *United States v. Felton*, No. 3:03-cr-00008, 2022 WL 545054 *2–4 (W.D. Va. Feb. 23, 2022) (Moon, J.).

Once it has determined that a sentence is eligible for resentencing, the court must make "a holistic resentencing determination as to whether the original sentence remains appropriate in light of the Fair Sentencing Act's reforms." *Collington*, 995 F.3d at 355.

> First, district courts must accurately recalculate the Guideline sentence range. Second, and relatedly, district courts must *correct* original Guideline errors and apply intervening case law made retroactive to the original sentence. Third, the court must consider the § 3553(a) factors to determine what sentence is appropriate . . . [including to] *depart downward* from the new Guideline range.

*Id*. (emphasis original) (internal citations omitted). Of particular relevance to this case is the Fourth Circuit's recent holding that "district courts abuse their discretion in letting stand a sentence of imprisonment that exceeds the statutory maximum established by the Fair Sentencing Act." *Id*. at 356.

### III

### A

Count One, conspiracy to distribute 50 grams or more of cocaine base in violation §§ 841(a)(1) and 841(b)(1)(A), is indisputably a "covered offense" within the meaning of the First Step Act. *See United States v. Wirsing*, 943 F.3d 175, 186 (4th Cir. 2019) ("All defendants who are serving sentences for violations of 21 U.S.C. § 841(b)(1)(A)(iii) and (B)(iii) . . . are eligible to move for relief under the Act"). Therefore, Ismel qualifies for resentencing.

Today the Guidelines call for a sentence of 480 months on Count One. A violation of § 841(b)(1)(A) now carries a mandatory minimum sentence of 10 years and a maximum sentence of 480 months. Ismel would still have a base offense level of 43 under the Guidelines due to the murder cross-reference found in U.S.S.G. § 2D1.1(d), which states that "[i]f a victim was killed

under circumstances that would constitute murder under 18 U.S.C. § 1111, had such killing taken place within the territorial or maritime jurisdiction of the United States, apply 2A1.1 (First Degree Murder)." *See also* PSR ¶ 15. As noted above, a base offense level of 43 corresponds to a Guideline sentence of life regardless of criminal history category. *See* U.S.S.G. § 5A, Sentencing Table. However, the new statutory maximum triggers the cap provided by U.S.S.G. § 5G1.1(a), which instructs that "where the statutorily authorized maximum sentence is less than the minimum applicable guideline range, the statutorily authorized maximum sentence shall be the guideline range." Therefore, the Guideline sentence on Count One is the new statutory maximum sentence of 480 months.

No intervening caselaw or Guideline amendment has changed the Guideline sentence as to Count Two. The Guideline sentence remains life.

Thus, Ismel's total Guideline sentence is one life term plus 480 months. But the question remains whether Ismel is eligible for a downward departure or variance from the Guideline sentence.

**B**

18 U.S.C. § 3553(a) specifies the factors courts are to consider in imposing a sentence. The list of factors is preceded by a broad admonition that courts "impose a sentence sufficient, but not greater than necessary, to comply with" the purposes of sentencing, which the statute identifies as just punishment, deterrence, protection of the public, and rehabilitation.

The § 3553(a)(2)(A) factors call for, among other things, a sentence that "reflect[s] the seriousness of the offense," "promote[s] respect for the law," and "provide[s] just punishment." Needless to say, these factors call for a substantial term of incarceration. The conduct underlying

– 5 –

Ismel's offenses includes murder and the proliferation of significant quantities of drugs in the Charlottesville community.

Nevertheless, Ismel urges that other § 3553(a) factors suggest life imprisonment is "greater than necessary, to comply with the purposes set forth" by Congress. § 3553(a). In particular the Court notes the "history and characteristics of the defendant" and the ongoing need "to protect the public from further crimes of the defendant." § 355(3)(a)(1), (2)(C). These factors, especially the remarkable evidence of rehabilitation that Ismel has presented, warrant a variance. *Cf. United States v. Chambers*, 956 F.3d 667, 675 (4th Cir. 2020) (district court erred in its belief that it could not consider post-sentencing conduct when analyzing the § 3553(a) factors in a First Step Act resentencing).

*Disciplinary Record.* During his 26 years in federal custody, Ismel has incurred just two disciplinary infractions. *See* Dkt. 374-3 (BOP Progress Report). The first and only violent infraction took place in 1997. *Id*. at 3. The second, which occurred in 2011, was for insolence to a staff member. *Id*. Ismel's disciplinary record has been spotless for over a decade.

*Educational and Vocational Training.* Ismel's course record, by contrast, is replete. *See id*. at 1–3. He has completed over 70 programs. *Id*. He has also earned his GED, an associate's degree, and an impressive number of certificates from a wide range of institutions and on myriad topics spanning everything from business administration to medical training. *See* Dkt. 374-5 (Certificates of Completion). Given Ismel's two life sentences, his continued commitment to bettering himself, including through the development of employment skills, is significant.

*Service.* Ismel has also demonstrated rehabilitation through his service to the prison community, including by leading the Suicide Watch Cadre. The staff psychologist at FCC Petersburg writes that in this role Ismel has "maintained professionalism throughout his work,

and continues to serve as a model for other members." Dkt. 374-6 (Employment Support Letters) p. 4. The Court is also in receipt of numerous letters from Ismel's fellow inmates, which resound with expressions of gratitude for Ismel's mentorship. *See* Dkt. 374-7.

*Employment.* Ismel has also shown a propensity for productive contribution to his community through his work in prison. Beyond simply maintaining stable employment, which itself would be notable, glowing letters from various of Ismel's work supervisors reflect an outstanding work ethic. *See* Dkt. 374-6.

Ismel's youth at the time of the offense is also of importance to the Court's determination. Ismel was 19—and had largely raised himself since the age of 16 because of his mother's substance abuse. *See* Dkt. 374 pp. 17–18. U.S.S.G. § 5H1.1 provides that "[a]ge (including youth) may be relevant in determining whether a departure is warranted[.]."  And, as already mentioned, the "nature and circumstances" of the offense, as well as a defendant's "history and characteristics" are relevant to sentencing under § 3553(a). "The Supreme Court has recognized, in the sentencing context, the diminished culpability of juvenile offenders, given their lack of maturity, vulnerability to social pressures, and malleable identities." *United States v. Howard*, 773 F.3d 519, 533 (4th Cir. 2014) (citing authority).

The Court also notes that Ismel appears to have a strong support network that is ready and eager to receive him upon his release. *See* Dkt. 374-8 (Community Support Letters). Ismel indicates that he intends to reside with Dana Wright in Charlottesville, who writes that Ismel will have access to resources to "help him get on his feet." *Id*. at 3. Given all of the above, the Court finds that Ismel is a low risk for recidivism—a conclusion which is shared by the BOP. *See* Dkt. 374-3 p. 7.

Finally, § 3553(a)(6) requires courts to impose a sentence that avoids "unwarranted sentence disparities" among defendants with similar records and culpability. In this vein, the Court notes that it recently reduced the sentences of Gregory Felton and Tadashi Keyes for crimes much like Ismel's. *See Felton*, 2022 WL 545054; *United States v. Keyes*, No. 3:03-cr-00008, 2022 WL 757958 (W.D. Va. Mar. 11, 2022) (Moon, J.). Both Felton and Keyes were serving life terms for their involvement in a drug distribution conspiracy which also involved a murder. Despite significantly less favorable evidence of rehabilitation than that demonstrated by Ismel, Felton's sentence was reduced to 360 months and Keyes's to 280 months.[2]

## IV

The Court finds that there should be a sentence reduction and that the sentence sufficient but not more than necessary to achieve Congress' sentencing goals as laid out in § 3553(a)(2) is 360 months.

Ismel's motion for reduction of sentence, Dkt. 374, will be granted. His term of imprisonment will be reduced to 360 months, consisting of time served on Count One and 360 months on Count Two. All other terms of the sentence will remain in full force and effect.

The Clerk of Court is directed to send copies of this Memorandum Opinion and the accompanying Order to Defendant, all counsel of record, the United States Probation Office, and the United States Marshals Service for delivery to the Bureau of Prisons.

Entered this 22nd day of April 2022.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE

---

[2] The Court is grateful for the capable representation provided by the Federal Sentence Reduction Clinic at the University of Virginia School of Law.